RUHR *et al. v.* COWAN, DIST. ATTY., *et al.*\*

(Division B.    April 25, 1927.)

[112 So. 386.    No. 26454.]

1. ELECTIONS. *Mandamus. Person may resort to either of two statu-
   tory methods to secure nomination for public office, but not both;
   person seeking nomination as political party's candidate at
   primary and defeated cannot have mandamus to get name placed
   on ticket (Hemingway's Code, sections 6413, 6417, 6793, 6794).*

   There are two methods of nominating candidates for public office
   in this state provided by section 6793, Hemingway's Code; one is
   to become a nominee of a political party under the primary laws
   of the state, and the other is by a petition of a given number of
   qualified electors provided for different situations and offices in
   this state in said section.  A party may resort to either of these
   methods, who desires to become a candidate for public office, but
   he cannot resort to both, and if a party seeking nomination at
   the hands of a political party in a primary is defeated therein,
   the court will not use a writ of mandamus to aid him in having
   his name placed on the ticket.

2. ELECTIONS. *Person participating in party primary is under duty
   to abide by result thereof and support nominee; if person partici-
   pating in party primary is dissatisfied he should pursue statu-
   tory remedy (Hemingway's Code, sections 6409, 6425).*

   A person who participates in a party primary, under section
   6409, Hemingway's Code (section 3717, Code of 1906), is under
   duty to abide by the result of the primary and support the no-
   minee therein named, and if dissatisfied with the result of the
   primary, should pursue the remedy provided by section 6425,
   Hemingway's Code (chapter 136, Laws of 1908).

3. ELECTIONS. *Mandamus. Election commissioners should determine
   whether petition to put person's name on ticket has been actually
   signed by parties whose names appear thereon, and whether they
   are qualified electors; election commissioners may be compelled
   to assemble and consider petition to put person's name on ticket,
   but their action cannot be controlled by mandamus (Heming-
   way's Code, sections 6767-6769, 6793).*

   The election commissioners of this state, as provided by law are
   given judicial and *quasi*-judicial powers, and exercise judgment

and discretion, and when a petition is presented to them, under section 6793, Hemingway's Code, requesting the name of a person to be placed on the ticket, they are charged with the duty of determining the facts as to whether the petition has been actually signed by the parties whose names appear thereon, and whether such parties are qualified electors. They may be compelled to assemble and consider these questions by mandamus, but the circuit court cannot control their action by mandamus, and cannot substitute itself for the election commissioners in determing the facts.

4. ELECTIONS. *Mandamus. Petitioners to have name placed on ticket, not attending meeting of election commissioners and proving genuineness of signatures of petitioners and their qualification, cannot resort to mandamus; on adverse decision by election commissioners, petitioners to have name put on ticket should take bill of exceptions and appeal to circuit court (Hemingway's Code, sections 6425, 6767-6769, 6793).*

When the petitioners, under section 6793, Hemingway's Code (section 4159, Code of 1906), desire a person's name to be placed on the ticket, they should present a petition to the election commissioners, and attend the meeting of such commissioners, and offer proof to satisfy the election commissioners of the genuineness of the signatures and the qualifications of the petitioners to sign same, and if they fail to so attend said meeting and offer such proof, they cannot resort to mandamus to accomplish what the election commissioners are designed to do. If they do meet the requirements of law and the commissioners decide against their petition, they should take a bill of exceptions and appeal to the circuit court.

*Corpus Juris-Cyc References: Elections, 20CJ, p. 104, n. 39 New; p. 109, n. 34; p. 111, n. 70; p. 113, n. 94 New; p. 119, n. 99; p. 133, n. 91; p. 134, n. 99; Mandamus, 38CJ, p. 547, n. 85, 86; p. 723, n. 4, 5.

APPEAL from circuit court of Harrison county.
HON. W. A. WHITE, Judge.

Proceeding by R. C. Cowan, district attorney of Hancock county, on the relation of Louis S. Bourgeois and another, for mandamus to be directed to William A. Ruhr and others, election commissioners of the town of Waveland, in Hancock county. From a judgment for relator, defendants appeal. Reversed, and judgment entered dismissing the petition.

*Carl Marshall,* for appellants.

I.   The court had no power to order the commissioners peremptorily to place the name of Louis S. Bourgeois upon the ballots as a candidate.   It is submitted that the court could go no further than to direct the commission to receive, consider and pass upon the petition.   *Board of Supervisors of Simpson County* v. *Walker,* 126 Miss. 595, 89 So. 260; *State* v. *Pigott et al.* (Miss.), 54 So. 257, 260; *Native Lbr. Co.* v. *Board of Supervisors of Harrison County* (Miss.), 42 So. 665; *Vicksburg* v. *Rainwater,* 47 Miss. 547.

II.   The granting of the writ in this case would contravene public policy; and it is submitted that the writ never issues when such result will follow.   Bearing in mind that the two Bourgeois both participated in the Democratic primary, which was held less than a month before the general election; and that the defeated Bourgeois desired to run in the general election against only one candidate, the one that obtained the democratic nomination in the primary, to encourage the bad faith embodied in his effort to obtain the aid of the courts of Mississippi to "jump" the party would establish a principle totally destructive of the primary election system of the state.   *Effingham, Maynard & Co.* v. *Hamilton,* 68 Miss. 523, 10 So. 39; *Bogan* v. *Holder,* 76 Miss. 597, 24 So. 695, 38 C. J., Mandamus, 550.

III.   While under our statute it is within the jurisdiction of our circuit courts, mandamus is an extraordinary remedy, controlled by equitable principles.   Accordingly, clear legal right to the relief sought by the writ is not sufficient in itself to warrant its issuance. The person to be benefitted by the issuance of the writ must have absolutely clean hands; all equities must be with him; and no element of estoppel must exist against him.   *People ex rel. Sherwood* v. *State Board of Can-*

*vassers,* 129 N. Y. 360, 29 N. E. 345, 14 L. R. A. 646; 38 C. J., Mandamus, 549; *Effingham* v. *Hamilton, supra; Swann* v. *Buck,* 40 Miss. 268; *McHenry* v. *State,* 91 Miss. 562, 44 So. 831; 16 L. R. A. (N. S.) 1062n; *Bogan* v. *Golder, supra.*

IV.   These proceedings were instituted under the provisions of section 2533, Hemingway's Code.   The district attorney brought the suit as a purely formal and technical matter.   The entire record makes it perfectly manifest that there was no public interest affected.

The trial court erred in its refusal to dismiss the suit as having been improperly brought.

*E. J. Gex* and *Gex & Russell,* for appellee.

The court has nothing to pass on now but a moot question.   The *supersedeas* issued by Judge ETHRIDGE in this matter effectively nullified the mandamus, for all purposes for which it could have issued, and there is nothing substantial for this court to pass upon.   That this court will not pass upon moot questions is well established. *Pafhausen* v. *State,* 47 So. 897.; *McDaniel et al.* v. *Hart et al.,* 41 So. 381.

If the question were not a moot question and the merits are looked into, the case should be affirmed and the *supersedeas* should not have been issued.   That mandamus will not lie in such cases, see: Code of 1906, section 3231; *Board of Police of Atalla County* v. *Grant,* 7 S. & M. 77; 38 C. J., page 541, section 1-a, and pages 615, 690; 18 R. C. L. 273.

We have searched the authorities to find if the courts have ever passed upon the specific question where one was a candidate at a primary election and defeated, as to whether it would bar his right to become a candidate at the general election, and we have been able to find but one authority either way on the subject: *Lacomb* v. *Laborde,* 61 So. 518.   In that case there had been a pri-

mary election and the defeated candidate in the primary sought to have his name placed upon the ticket at a general election for the very office for which he was defeated in the primary. The commissioners of election refused to place the name of the defeated candidate on the ticket because of a Louisiana statute which provided that the defeated candidate at a primary election could not be a candidate at the general election. However, the voters disregarded that fact and wrote his name onto the ballot, marking an ''x'' opposite same. The result of the general election and the vote in that manner was that the defeated candidate in the first primary received the largest number of votes in the general election, which election the supreme court of Louisiana upheld.

Etheridge, J., delivered the opinion of the court.

R. C. Cowan, district attorney in Hancock county, Miss., on relation of Louis S. Bourgeois and Peter J. Bourgeois, filed a petition for mandamus to compel the election commissioners of the town of Waveland, in Hancock county, Miss., to place the name of Louis S. Bourgeois upon the ticket in the municipal election to be held December 7, 1926. The petition alleged that Louis S. Bourgeois was a qualified elector of the municipal body known as the town of Waveland, and of the county of Hancock; that Peter J. Bourgeois was also a qualified elector of said municipality, county, and state, and appears qualified as *per* the pollbook of said county and town; that said petitioners further allege that R. C. Bordages, William A. Ruhr, and Alphonse B. Favre are the commissioners of election of said town of Waveland, and that, pursuant to section 4159 of the Code of Mississippi a, petition was circulated in said town addressed to Louis S. Bourgeois, of Waveland, requesting him to become a candidate for the office of mayor of said town, a copy of which petition and the signers thereto being attached and made a part of the petition as an exhibit thereto; that said

petition was duly circulated and signed by more than fifty qualified electors in said town, requesting Louis S. Bourgeois to become a candidate for mayor in said town, and that Peter J. Bourgeois was one of the signers of said petition; and after the petition was signed by more than fifty electors of said town, it was presented to the chairman of said election commissioners more than fifteen days before the said election which was to be held on December 7, 1926; that said petition was in due form and duly presented to said commissioners of election more than fifteen days before the election, but that, notwithstanding this, said election commissioners totally refused and still refuse to place the name of Louis S. Bourgeois on the ticket as a candidate for mayor in said election to be held December 7, 1926. It was further alleged that two of the election commissioners met and had the ticket printed for said election, without considering the petition of petitioner and wholly and absolutely disregarding said petition, and said ticket was printed without the name of Louis S. Bourgeois appearing thereon; that Louis S. Bourgeois had appealed to the commissioners to go over the petition, check up the names signed, and have his name placed on said ticket, and that said commissioners have totally refused to do so, and that his name did not appear on the ticket, and he was deprived of being a candidate to be voted for at said election for the office of mayor; and prayed for a writ of mandamus to be issued compelling said commissioners to meet and place his name on said ticket to be voted for in said election.

Said petition was set for hearing in vacation, on Friday, December 3, 1926. The defendants were duly summoned to appear and the defendant Bordages admitted the allegations of said petition. The defendants Ruhr and Favre, individually and as election commissioners, filed an answer to the petition alleging that Ruhr and Favre constituted a majority of the election commissioners of said town, and acted for said commission, through-

out the matters involved in this suit, as a corporate body and entity; and that while the said R. C. Bordages is named as a defendant in said suit, he is a minority member of the election commission, and that he has been and is conspiring with said relators to violate the rules of good faith, public policy, and interest, and to defeat the efficacy of the Democratic primary system of nominating candidates for office. They further allege that the town of Waveland is a small one, incorporated under a special charter, holding its election of officers once every four years, and admitting that the next election for municipal officers was to be held December 7, 1926, and that Louis Bourgeois is a registered qualified elector of said municipality. They further state that they were without knowledge of the circulation and signing of said petition addressed to Louis S. Bourgeois, requesting him to become a candidate for mayor of said town, and that they had never seen the petition referred to in the pleadings, but they deny that said petition was ever presented to or filed with said commissioners more than fifteen days before the election to be held December 7, 1926, or at any other time. They allege that they were informally aware, by means of rumor that some petition, purporting to be a request to Louis S. Bourgeois to become a candidate for mayor of said town in said general election, had been informally delivered to R. C. Bordages, but when defendants fixed a time of meeting, and notified the said R. C. Bordages thereof, said meeting being for the purpose of printing the tickets, etc., he did not attend said meeting and has never presented said petition to the commissioners of election, or to either of the individual defendants therein; nor did said Louis S. Bourgeois, or any other person, appear before the meeting of said commissioners held for said purpose and present any petition for the placing of his name upon the ticket at said general election; that said commissioners met, and had the ticket printed, and did not have the name of Louis S. Bourgeois placed thereon as a candi-

date for mayor. It was further alleged that, pursuant to the law, a primary election to determine the identity of the nominee of the Democratic party as a candidate in said general election for mayor of said town was duly and regularly held on Tuesday, November 9, 1926; that in said primary election there were only two candidates, viz., George Herlihy and the said Louis S. Bourgeois, and the said Louis S. Bourgeois, and each and all of said relators, participated by voting and agreeing, by implied contract, with the majority of the voters in said town, and with the Democratic committee composed of your defendants and three others, and with all the voters in said primary election, to be bound, by the result of said primary, to support the said nominee, and not being qualified to vote in said primary unless with the intention of supporting the nominee therein. They further alleged that the result of said primary election was the defeat of the said relator, Louis S. Bourgeois, and the election of the said George Herlihy, and that the only candidate for mayor upon the ticket in the general election was the said George Herlihy; and that the said Louis S. Bourgeois and the other relators have not changed their political intentions held at the time of said voting in said primary election, by reason of change of platform or doctrine economy, or by reason of change in the personnel of candidates, the same two candidates being opposed to each other in said general election, if the said Louis S. Bourgeois should be a candidate therein; that no contest of, or appeal from, said primary election was or has been taken by the said Louis S. Bourgeois; and the said relators Louis S. Bourgeois and Peter J. Bourgeois (the said Peter J. Bourgeois having supported and voted for the said Louis S. Bourgeois in said primary) merely seeking another election between the same candidates, in which it is hoped by the said Louis S. Bourgeois after his said defeat in Democratic primary, to augment his political support by causing apostates in the ranks of the Democratic party

in said town, and by securing the colored, registered vote therein; that said town has a population of about five hundred inhabitants and one hundred eighty-nine registered voters, jone hundred seventy-five of whom voted in said Democratic primary in which Louis S. Bourgeois was defeated.

On the trial it was agreed that the facts contained in said answer are true as therein set out, subject, however, to the following qualifications: It is agreed that said petition addressed to said Louis S. Bourgeois, requesting him to become a candidate for the office of mayor in said general election, was circulated after the defeat of said Louis S. Bourgeois in said Democratic primary, and that said defendants, with the exception of Roger C. Bordages, had never seen the petition; that the persons whose names appear, setting forth the number requesting him to become a candidate for the office of mayor at said general election on December 7, 1926, were qualified electors at the time said Democratic primary was held and continuously thereafter, and now are, and will be on and after December 7, 1926, qualified to participate in said general election. But the question of presenting and filing of said petition (which shall be introduced in evidence) and the action on said petition shall be governed and determined by oral proof to be introduced, excepting also the allegation of collusion between Bordages and Louis S. Bourgeois is not admitted. The oral proof taken showed more than fifty names were signed to said petition, all being qualified electors, and that the petition was presented to Bordages, and that said Bordages did not attend the meeting held by the other two commissioners on the last day, more than fifteen days preceding the general election; that Bordages was notified of said meeting, and did not attend and present the petition on that day, or tender any proof that the persons who appeared to be signers of the petition were such in fact, or that they were qualified electors. Bordages, the next day following the expiration of

the fifteen days before the election, undertook to get a meeting of the commissioners, but failed to do so.

The circuit judge, when the case came on in the court below, heard the evidence as to the qualification of the signers and as to their signing the petition, and entered an order directing the election commissioners to print the name of Louis S. Bourgeois on such ticket. He did not direct the election commissioners to meet and canvass the petition, or determine whether or not the signers had signed same and whether or not they were qualified electors, but entered a peremptory order of mandamus directing Louis S. Bourgeois' name to be placed on the ticket.

The appellants were granted an appeal, but refused a *supersedeas,* and a judge of this court was applied to and granted the *supersedeas.* The appeal is now before us.

Under section 6409, Hemingway's Code (section 3717, Code of 1906), it is provided:

"No person shall be eligible to participate in any primary election unless he be qualified to vote in the election for which such nomination is to be made, intends to support the nominations in which he participates, has been in accord with the party holding such primary within the two preceding years, and is not excluded from such primary by any regulation of the state executive committee of the party holding such primary. Any member of the party holding the primary, or any primary election officer, may challenge any person offering to vote, and cause him to answer, under oath, questions relating to his qualifications. Any election officer of the precinct may administer oath to such challenged person; and false testimony given upon such inquiry shall be perjury and punishable as such; nor shall any elector be allowed to vote who has sold or offered to sell his vote or influence, directly or indirectly, for the support or defeat of any candidate or measure voted on that year; nor any who that year has paid or offered to pay any-

thing for another's vote or influence for or against any candidate or measure.''

Section 6413, Hemingway's Code (section 3721, Code of 1906), provides that the name of any candidate shall not be placed upon the official ballot in general elections as a party nominee, who is not nominated as therein provided, and that the election of any party nominee otherwise than as therein provided shall be void and he shall not be entitled to hold the office to which he may have been elected. No political party shall be entitled to recognition, as such, in the appointment of the county or precinct election officers unless it has made its nominations as therein provided.

Section 6793, Hemingway's Code (section 4159, Code of 1906), reads as follows:

''The ballot so printed shall contain the names of all candidates who have been put in nomination, not less than fifteen days previous to the day of election, by the primary election of any political party. There shall be printed on the ballots the names of all candidates so nominated, and whether the nomination be otherwise known or not, upon the written request of one or more of the candidates so nominated, or of any qualified elector who will make oath that he was a participant in the primary election, and that the person whose name is presented by him was nominated by such primary election. The commissioners shall also have printed on the ballot the name of any qualified elector who has been requested to be a candidate for any office, by a written petition signed by at least fifteen qualified electors, for any beat or municipal office in a town or village of less than three hundred inhabitants, or fifty qualified electors, for any other office, and when the petition or request has been presented to said commissioner not less than fifteen days before the election; but if any candidate has been so nominated, or has been so requested to become a candidate, less than fifteen days before the election, his name shall not be printed upon the ballot.''

Election commissioners, under the laws of this state, have judicial and *quasi*-judicial powers, under section 6767, Hemingway's Code (section 4133, Code of 1906), wherein it is provided:

"All cases on appeals shall be heard by the boards of election commissioners *de novo,* and oral evidence may be heard by them; and they are authorized to administer oaths to witnesses before them; and they have power to *subpoena* witnesses, and to compel their attendance; to send for persons and papers; to require the sheriff and constables to attend them and to execute their process. The decisions of the commissioners in all cases shall be final as to questions of fact, but as to matters of law they may be revised by the circuit and supreme courts. The registrar shall obey the orders of the commissioners in directing a person to be registered, or a name to be stricken from the registration books."

Section 6768, Hemingway's Code, provides:

"Any elector aggrieved by the decision of the commissioners, shall have the right to file a bill of exceptions, thereto, to be approved and signed by the commissioners, embodying the evidence in the case and the findings of the commissioners, within two days after the rendition of the decision, and may thereupon appeal to the circuit court upon the execution of a bond, with two or more sufficient sureties to be approved by the commissioners, in the sum of one hundred dollars, payable to the state."

Section 6769, Hemingway's Code, provides that:

"It shall be the duty of the commissioners, in case of appeal from their decision, to return the bill of exceptions and the appeal bond into the circuit court of the county within five days after the filing of the same with them; and the circuit courts shall have jurisdiction to hear and determine such appeals."

Election commissioners are officers of the state—they are public officers. The executive committee of each party are party officers, but not public officers, and a

146 Miss.—56.

method is provided by law for the hearing of contests by persons defeated in the party primaries.

By section 6425, Hemingway's Code (Laws 1908, chapter 136), it is provided that:

"A person desiring to contest the election of another person returned as the nominee of the party to any district, county or beat office, may, within twenty days after the primary election, file a petition with the secretary, or any member of the county executive committee in the county in which fraud is alleged to have been perpetrated, setting forth the grounds upon which the primary election is contested; and it shall be the duty of the executive committee to assemble by call of the chairman or three members of said committee, notice of which contest shall be served five days before said meeting, and after notifying all parties concerned, proceed to investigate the allegations of fraud, and, by majority vote of members present, declare the true results of such primary."

By section 6417, Hemingway's Code (section 3726, Code of 1906), as amended by the Laws of 1910, chapter 209, it is provided:

"Nominations for all municipal offices, which are elective, shall be made at a primary election or at primary elections to be held at a time, or at times, to be fixed by the municipal executive committee of the political party to which the candidates for nominations belong; each said municipal executive committee shall have as many members as there are legislative officers of the municipality. The party primary elections for the purpose of electing party nominees to municipal offices and of electing members of the party municipal executive committees shall be held in the year in which a general municipal election is to be held. If after any municipal primary election a second primary election should be necessary, it shall be held not later than seven days from the first election. The names of all candidates belonging to the same political party shall be furnished the municipal

executive committee of that party at least thirty days before a primary election. The provisions of this chapter shall govern all municipal primary elections as far as applicable, but the officers to revise and prepare the pollbooks and ballots and the managers of the primary election shall be appointed by and the returns of the election shall be made to the municipal executive committee of the party holding said primary. Vacancies in the executive committee shall be filled by it, provided that this section shall only apply to cities and towns.''

It will be seen from reading section 6793, Hemingway's Code (section 4159, Code of 1906), that there are two methods by which a person may be elected to office in this state. One is by nomination by the political party to which the candidate belongs, under the provisions of the chapter on primary elections, and the other is by being nominated by at least fifty qualified electors of the municipality, county, or district. One of these methods must be pursued by any person desiring to become a candidate for office in a general election. Such person may resort to one of these methods, but he cannot resort to both of them. If he desires to become a candidate for the party's nomination in the primary, or to participate in the primary, he must intend to support the nominee. If he does that, and is not satisfied with the result of the vote therein, he must pursue the method provided for a contest as above referred to, and he must abide the result of the primary and such contest.

Public policy, as expressed in these statutes, is. that a person who participates in a primary shall abide by the result thereof. Mandamus will not issue to aid a party who has become a candidate for office in a primary, and has been defeated therein, in obtaining a position on the ballot by the other method. Mandamus is a discretionary matter, and not a matter of right absolutely, and the court will not use a writ of mandamus to aid a party in violating the good faith which he pledged

to his party in entering the primary as a candidate of the party.

Section 6794, Hemingway's Code (section 4160, Code of 1906), provides as follows:

"There shall be left on each ballot one blank space under the title of each office to be voted for, and in the event of the death of any candidate whose name shall have been printed on an official ballot, the name of the candidate duly substituted in the place of such deceased candidate, may be written in such blank space by the voter."

In *McKenzie* v. *Boykin,* 111 Miss. 256, 71 So. 383, we held that a party could not have his name written on the ballot except in conformity to this last section. So, we are of opinion that the relator was not entitled to the writ of mandamus on the facts above set forth. Even if he had been entitled to have his name placed on the ballot under the facts stated, the circuit judge was without power, on the writ of mandamus, to himself direct the candidate's name to be printed on the ballot. The law clothes the election commissioners with the duty of determining the sufficiency and genuineness of the signatures and the qualifications of the signers, subject to be reviewed by the circuit court on appeal under the section above cited.

It follows from what we have said that the court below erred in granting the writ of mandamus, and the judgment will be reversed and judgment entered here dismissing the petition.

*Reversed .and judgment here.*